## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEYSHAWN BRAXTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-88-JWD-SDJ** |
| **KOLD TRANS, LLC, VICTORIA DAULTON AND ACE AMERICAN INSURANCE COMPANY** | **CONSOLIDATED WITH NO. 22-195-JWD-SDJ** |

## <u>ORDER</u>

On May 6, 2021, while riding as a passenger in a friend's car, Plaintiff was involved in a multi-car accident with an 18-wheeler. She then filed this personal injury action. During discovery, Defendants issued a Rule 45 subpoena to AT&T, Plaintiff's cell phone carrier, commanding it to produce the following information by March 1, 2023:

> A certified copy of any and all subscriber information or call detail records/reports for telephone usage, including but not limited to phone calls, text or data communications, P2P communications, internet usage, WAP usage, cellular site and GPS information, and cell tower pings regarding the cellular device(s) registered to the following AT&T customer: [Plaintiff] . . . for May 6, 2021 only, i.e. the date of the accident which forms the basis of the subject lawsuit.

(R. Doc. 25-2 at 3).

Plaintiff promptly filed this Motion to Quash (R. Doc. 25) the subpoena, arguing it seeks private information that lies beyond the scope of permissible discovery. In response, Defendants claim Plaintiff's cell phone data from the entire day of the accident — May 6, 2021 — is discoverable based on an inconsistency between Plaintiff's testimony and a notation in the "medical records from Acadian Ambulance." (R. Doc. 27 at 2).

A.    **Applicable Law**

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas to non-

parties. A subpoena seeking information from a non-party, like the one at issue here, is subject to

the discovery limitations outlined in Rule 26(b)(1). That rule defines the scope of discovery as

including "any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(d)(1) (proportionality takes into

account the parties' resources, "the importance of the issues at stake," the "importance of the

discovery in resolving the issues, and whether the burden . . . outweighs its likely benefit."). And

while Rule 26 defines its general parameters, the actual scope of discovery in a given case lies

within the sound discretion of the trial court. *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724

(5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of

discovery").[1]

"Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its

scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of

Rule 45." *Hahn v. Hunt*, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016); *see also* Fed. R. Civ.

P. 26(c)(1)(D) (motion for protective order); Fed. R. Civ. P. 45(d)(3) (quashing or modifying a

subpoena).

---

[1] Ordinarily, a party has limited standing to quash or modify a subpoena under Rule 45(d)(3), absent "a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it." *Howard v. Seadrill Americas, Inc.*, 2016 WL 7012275, at *2 (E.D. La. Dec. 1, 2016). But if a party lacks standing under Rule 45, they may nonetheless seek a protective order pursuant to Rule 26(c) to limit the scope of discovery.

Here, the parties do not dispute Plaintiff's "standing to challenge the subpoena in light of [her] personal interest in [her] cell phone records." *Blackmon v. Bracken Constr. Co., Inc.*, 2019 WL 5866070, at *3 (M.D. La. Nov. 8, 2019); *see also Howard v. Seadrill Americas, Inc.*, 2016 WL 7012275, at *2 (E.D. La. Dec. 1, 2016) (Because the nonparty subpoena seeks plaintiff's cell phone records, "the Plaintiff does have a sufficient personal interest in the information to have standing to challenge the subpoena."); *Winter v. Bisso Marine Co., Inc.*, 2014 WL 3778833, at *2 (E.D. La. July 29, 2014) ("[Plaintiff] has standing to object to the subpoena because it implicates his personal interest in the privacy of his cell phone records.").

**B.    Discussion**

Plaintiff argues that her cell phone records are private and beyond the scope of permissible discovery. She indicates that five vehicles were involved in the accident and thus, Defendants have sufficient evidence from Plaintiff and other witnesses regarding her consciousness after the accident. (R. Doc. 25-1 at 6). Moreover, Plaintiff was a passenger asleep in the car when the accident occurred, making her cell phone records irrelevant. Defendants, however, insist that Plaintiff's cell phone records became relevant when she gave testimony in conflict with the medical records obtained from Acadian Ambulance Services, who responded to the scene of the accident.

According to Defendants, Plaintiff "testified that she does not recall . . . the accident," which happened just after 5:00 p.m. on May 6, 2021. (R. Doc. 27 at 2). But the real issue, Defendants argue, is that Plaintiff "claims she was asleep at the time of the subject accident and did not wake up until [5:00 a.m.] the next day" — a roughly 12-hour period. (R. Doc. 27 at 2, 3-4). "Contrary to plaintiff's assertions," Defendants suggest, the ambulance records indicate she was "alert, conscious, and spoke to emergency personnel at the scene of the accident." (R. Doc. 27 at 2).

Because of this "contradictory evidence," Defendants now claim that all of Plaintiff's cell phone data from May 6, 2021, is necessary to "determine whether plaintiff made any telephone calls, sent any text messages, took any photographs, or otherwise used her cellphone after the [] accident," as "[t]his evidence is highly relevant to plaintiff's claims that she was not awake and/or unconscious following the [] accident." (R. Doc. 27 at 2).[2] The Court, however, does not agree.

---

[2] The Court must point out that Defendants do not make any other arguments concerning the relevance of this information. They do not, for example, suggest that Plaintiff was using her phone to distract the driver of her car. They do not argue that Plaintiff's use of her phone after the accident would somehow show the real extent of her injuries. And Defendants do not claim they have information suggesting Plaintiff took photographs or sent text messages after

First, Plaintiff's deposition testimony is not clearly inconsistent with the ambulance records as to warrant the discovery of her private cell phone data. Based on the Court's review of the testimony provided, Plaintiff did not say she was asleep or otherwise unconscious for the entire 12-hour period for which Defendants are concerned — i.e., from just after 5:00 p.m. on May 6, 2021 (the time of the accident), until 5:00 a.m. on May 7, 2021 (when Plaintiff remembers waking up in the hospital and texting her supervisor and her dad). (R. Doc. 27-1 at 2) ("I think I didn't wake up until 5:00 the next morning.").

To be sure, Defendant is correct that Plaintiff claims she was sleeping when the accident happened. Indeed, Plaintiff's testimony, pleadings, and the ambulance records themselves all consistently report that she was asleep at the time of impact. (R. Doc. 1-1 at 3) (sleeping when accident occurred); (R. Doc. 15 at 1) (sleeping at time of accident); (R. Doc. 27-2 at 6) ("sleeping when the accident happened"); (R. Doc. 27-1 at 5) ("asleep in the passenger seat"). Plaintiff also testified that she has no recollection of the accident. (R. Doc. 27-1 at 5, 6). But nothing supports Defendants' contention that Plaintiff testified she was unconscious from the time of the accident until she woke up around 5:00 a.m. the next morning.

Indeed, Plaintiff testified that she remembers her clothes being removed by a medical team at some point, but she did not know if this happened in the emergency room or on the scene:

> I don't remember where I was. But like, I was basically awake, and I saw bright lights, and I felt people taking off my clothes. And then I was out again.

(R. Doc. 27-1 at 6). This testimony actually contradicts Defendants' position.

And the Court fails to see how this, or any of the testimony provided (R. Doc. 27-1), is so inconsistent with the ambulance records, which indicate Plaintiff was "alert" when first assessed

---

the accident that would be relevant to the issues in this litigation. Instead, they only point to a perceived contradiction between her testimony and the ambulance records, without really explaining why that contradiction is significant.

by paramedics at 18:06:00 and responded to questions about her condition. (R. Doc. 27-2 at 5) (Those same records indicate Plaintiff was given administered Fentanyl at both 18:12:00 and 18:17:00.). Based on the Court's review, there is no inconsistency that would make the private cell phone data sought by Defendants proportional to the needs of this case or otherwise fall within the scope of discovery.[3]

Beyond that, Defendants are requesting all of Plaintiff's cell phone data from the day of the accident—i.e., all 24 hours of May 6, 2021. But the accident didn't occur until after 5:00 p.m. And so, the first 17 of the 24 hours requested are wholly irrelevant. What's more, Defendants want to know if Plaintiff was unconscious from the time of the accident until she remembers waking up in the hospital at 5:00 a.m. on May 7th. But critically, the subpoena does not request any cell phone data from May 7, 2021.

To summarize, Defendants are concerned with Plaintiff's consciousness during a 12-hour period. But they issued a Rule 45 subpoena covering a 24-hour period — twice the amount necessary — and only 7 of those 24 hours actually fall within 12-hour period of alleged concern. The remaining 5 hours are simply not covered.

Finally, even if the information was somehow relevant, Defendants could obtain it from multiple other sources. Plaintiff has provided her medical records following the accident, which would indicate her condition immediately after the accident and while she remained hospitalized. She has also answered deposition questions and written discovery about whether she used her cell phone to contact anyone or take photographs after the accident.

---

[3] While the transcript of Plaintiff's deposition includes "162 pages" of testimony (R. Doc. 27-1 at 7), Defendants only gave the Court 5 nonconsecutive pages — pg. 43, 100, 121, 124 and 136 (R. Doc. 27-1). If Plaintiff did give testimony that is contradicted by the ambulance records, as Defendants claim, it is not in the record.

C.    **Conclusion**

Defendants have not shown that the ambulance records somehow contradict Plaintiff's testimony. The Court is simply at a loss to see how the circumstances justify its request for all of Plaintiff's cellular data — not just phone calls, text messages or pictures — from the day of the accident. Therefore,

**IT IS ORDERED** that's Plaintiff's Motion to Quash (R. Doc. 25) Defendants' Rule 45 subpoena (R. Doc. 25-2) is **GRANTED**. Defendants will immediately **provide** a copy of this **Order** to **AT&T** to ensure AT&T **does not produce** any phone records in response to the subpoena.

 Signed in Baton Rouge, Louisiana, on June 21, 2023.


_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**